O’Neall, J.
It appears that Col. Joseph Kershaw in 1790 conveyed the whole of his estate to five persons, of whom James Kershaw was one, in trust to pay the debts of the said Joseph out of the said estate ; and the residue, if any, to transfer and deliver to the said Joseph, his heirs, executors or administrators. Col. Kershaw died in 1791, leaving a will bearing date in 1788, which devised and bequeathed his real estate in certain specified portions among his eight children, and his personal estate in equal shares among his wife and children. James Kershaw and Joseph Kershaw, Jr., were two of the children, heirs-at-law and devisees of Col. Kershaw. Joseph Kershaw, Jr., was a tax-collector, and Adamson and James Kershaw were his securities : he made default and was found to be in arrear to the State $2202 99, for which sum, after his death (which took place in 1791) several judgments were recovered against John Kershaw, administrator of Joseph Kershaw, Jr., (deceased) and against Adamson and James Kershaw, the securities of the said Joseph. The whole amount was paid by Adamson, and James Kershaw contributed and paid to him the one-half of the amount so *by him paid ; and the executions issued 16th January, 1805, on the jndg-ments were returned satisfied. These transactions took place during the continuance of the trust, and before the death of James Kershaw, who died in 1815. It is true, that in 1794 the trustees, according to a power to that effect contained in the deed, appointed John Kershaw their attorney and general agent under the said trust deed, and he had from that time the entire management of the trust estate. In 1828, all the original trustees being dead, John Kershaw was substituted as a trustee under the trust deed in the Court of Equity. It is alleged by the complainants that James Kershaw was the surviving trustee : the defendant, however, contends that Robert Henry was; in this respect there appears to be no proof on the subject whatever; it is allegation against allegation, and *238 no conclusion can be drawn from either — Sarah Kershaw is the widow and the only surviving heir or representative of the estate of Joseph Ker-shaw, Jr., (deceased) ; Henrietta Perkins, from the award, seems to be the only surviving heir and representative of the estate of James Kershaw, (deceased). The arbitrators to whom were referred “ all the claims, interests and rights of the heirs of the late Col. Joseph Kershaw, in his estate,” undertook to charge the estate of Joseph Kershaw, Jr., ascertained and separated by their award from the rest of the estate of Col. Joseph Kershaw, with the payment of the debt to James Kershaw, on account of the amount paid by him as security for the said Joseph Ker-shaw, Jr., by awarding to Henrietta Perkins, as the representative of James Kershaw, (deceased), 13-81 of the 32-81 parts of the estate of Col. Kershaw, which constituted the share of the said Joseph Kershaw, Jr., and to his widow Sarah the remaining 19-81 parts. From the death and minority of some of the parties, it became necessary to have the award confirmed by the Court of Equity. Accordingly a bill was filed for that purpose. Mrs. Sarah Kershaw objected to the confirmation of so much of the award as set up the debt due by her husband’s estate to James Kershaw, and vested in Henrietta Perkins’ 13-81 parts of the estate of Col. Kershaw out of the share to which Joseph Kershaw, Jr , was enti-satisfaction of the said debt, on *the ground that the arbitrators had exceeded the submission. This objection was sustained by the Chancellor, and that part of the award set aside; in all other respects it was confirmed. From this decree Henrietta Perkins has appealed', on the ground that the arbitrators did not exceed the submission in awarding as they did.
The submission by the heirs of Col. Joseph Kershaw, deceased, is in as general terms as it could well be couched — it is “ all our claims, interests and rights in the said estate.” This covers everything which could in any way be connected with, arise out of, or spring from the estate of-Col. Kershaw. To see whether the arbitrators, in making up their award, have exceeded their powers under this general submission, it is necessary that we should have evidence of the facts, which, as they supposed, autho-rised them to make the award which they did. This is not evidence in explanation of the award; but it is evidence to show whether it is or is not an award binding on the parties. It ascertains whether the thing awarded, which may or may not be within the submission, is within its terms and intention. The facts which have been already stated were either in proof before the arbitrators, or within their knowledge. Upon them they passed and made the award, which is now the subject of complaint. The single inquiry is, had they the right, on the facts before them, under the submission, to make the award ? Whether right or wrong, is not now to be investigated. If it was within the submission, it is not pretended that any ground exists upon which the award can be set aside.
Since the able and ingenious re-argument of the defendant’s counsel, I have gone over my former views of the case, and have compared his arguments with the facts of the case, and the views of the case heretofore expressed by this Court, and.I confess that I have been able to discover no ground upon which the Chancellor’s decree ought to be sustained, and the award set aside.
James Kershaw, who was one of five trustees in whom the legal estate *239 in the whole of Col. Kershaw’s estate was vested, was the security of Joseph Kershaw, Jr., and in 1805 paid *for him the sum of money now claimed to be refunded. He had the right to be refunded this sum before his legal title could be devested — for it must be recollected, that at law the cestui que trust could.have had no remedy — it is alone in Equity that he could have claimed the execution of the trust; and I can not be persuaded that it ever was doubted, that Equity in decreeing the execution of the trust would secure one of the several trustees, for all sums of money which he had been legally compelled to pay his cestui que trust estate. Taking this to be true, what were the claims, interests and rights in Col. Kershaw’s estate,” to which Joseph Kershaw, Jr., was entitled ? I answer, that it is clear that his claims, interests and rights, were his share charged with the debt paid for him by his trustee, as his security. In other words, that share could not be taken out of the possession of the trustee, until that payment was made to him. This is compelling a party who asks for equity, to do equity, and it is on this principle that the whole doctrine of a lien of a trustee for advances is predicated. But if I understand the argument, it is contended that James Kershaw never was entitled to act as a trustee after ’94, when John Kershaw was appointed the attorney of the trustees. There can, however, be nothing in this _ proposition. It would, to give it effect, be making the attorney superior to the principal — the created greater than the creator, and power delegated, irrevocable. John Kershaw’s acts were, however, the acts of each and all the trustees. They and each of them were bound by whatever he did — still, however, the estate was in them ; and it was against them, and not their attorney, that the cestui que trust must have proceeded to have the trust decreed. Neither can the substitution of John Kershaw, in ’28, as trustee, by the order of the Court of Equity, change the rights of the parties — it is true, the legal estate is then vested in him, but he holds it subject to all the equities existing between the original trustees or any of them, and the cestui que trusts or any of them. The question, whether Joseph Kershaw’s share of his father’s estate ought to be charged with the payment to James Kershaw of the money paid by him, as his security, according to the views which I have ^suggested, was necessarily to be decided upon by the arbitrators under the submission.
There is, however, another consideration, which to my mind, is conclusive to show the authority of the arbitrators to award as they did. The security, who pays the debt of his principal, has the right to be remitted to all the rights and securities of the creditor. He is in Equity substituted for the creditor. The debt to the State was a judgment against the administrator of Joseph Kershaw, deceased. In Equity the securities, upon showing that they, and not the administrator, paid the money, would be allowed to vacate the entry of satisfaction on the execution by the sheriff as made by mistake, and to set up the judgment as a subsisting lien on the real estate of Joseph Kershaw, Jr., deceased. The proof is clear, that Adamson first paid the entire debt, and that subsequently James Kershaw paid to him one moiety. The executions against them were properly returned satisfied, but that against the administrator of Joseph Kershaw, Jr., deceased, was improperly so returned ; and James Kershaw, for the amount paid by him or his representative, had the right *240 to claim that the entry should be set aside and the judgment set up for the amount due to him, as a lien on Joseph Kershaw, Jr.’s, estate. This was in effect done by the arbitrators, when they ascertained that 32-81 parts of Col. Kershaw’s real estate belonged to Joseph Kershaw, Jr., and of course descended to his heirs, and when they set up the moiety of the judgment paid by James Kershaw, as a subsisting lien, and having ascertained the amount due, appropriated 13-81 parts to the payment. This award was, I think, within the submission, and I am not disposed to scan, with great nicety, the decision of men who were the friends of the parties, and intimately acquainted with the affairs which they were called upon to adjust, and which, from the.death of the parties and lapse of time, could be only justly arranged by the domestic forum of arbitration, which acts according to good conscience and not by technical rule.
is therefore Ordered and decreed, that so much of the Chancellor’s decree as sets aside that part of the award vesting in Henrietta Perkins’ 13-81 parts of the estate of Col. Kershaw out of the share of Joseph Kershaw, Jr., be reversed, and that the said award be confirmed entirely.
Johnson and Harper, Js., concurred.